## HEKKING v. PFAFF.

(Circuit Court,• D. Massachusetts. August 24, 1897.)

### No. 584.

1. DIVORCE—SUBSEQUENT AWARD OF ALIMONY—JURISDICTION.
   A decree of divorce was entered by a circuit court of South Dakota in favor of plaintiff, a resident of that state, against defendant, a resident of Massachusetts; the court having no jurisdiction of defendant. Defendant afterwards married, and subsequently, on an amended bill filed by plaintiff, by leave of the court, without notice or attempted notice to the defendant, a decree was entered awarding plaintiff alimony. *Held*, that such decree was void, and an action based thereon to recover the alimony could not be maintained.

2. SAME—EFFECT OF MARRIAGE OF DEFENDANT.
   Where, in accordance with the laws of the state, a court renders a decree of divorce in favor of one of its own residents against a resident of another state without acquiring jurisdiction over the latter, his subsequent marriage will not prevent him, either as a ratification, waiver, or estoppel, from denying the jurisdiction or authority of the court to open the decree and award alimony against him.

D. F. Kimball, for plaintiff.
Jabez Fox and Gerard Bement, for defendant.

PUTNAM, Circuit Judge.    April 20, 1893, the plaintiff, who was then a resident of the state of South Dakota, obtained a decree for a divorce against the defendant in the circuit court of that state for the county of Lincoln.   In the original complaint she prayed for alimony, but no alimony was granted in connection with the decree of divorce.    The entire decree was as follows:

"It is ordered and adjudged that the bonds of matrimony heretofore and until now existing between the said plaintiff and the said defendant be, and the same are, dissolved, and that plaintiff have leave to resume her maiden name of Christine Hekking."

No reservation whatever was made of record with reference to further proceedings in the cause, although it may be that it was in the power of the court to have entered on the heel of such a decree a further decree for alimony against parties over whom it had jurisdiction.    In July, 1893, defendant married again.    In his answer to this suit he admits that he married in reliance on the decree of divorce.    Subsequently, in March, 1896, the plaintiff prayed that the decree entered might be opened.    Leave was granted, and thereupon the plaintiff filed an amended bill alleging grounds for alimony which had arisen since the original decree, and praying therefor anew.    In

June, 1896, without any notice to the defendant, and without attempting any, the court entered a decree as follows:

"This cause coming on to be heard upon the application of plaintiff for alimony, support, and maintenance herein, O. S. Gifford, Esq., appearing for the plaintiff, and no one opposing, findings of fact and conclusions of law having been waived, and on reading and filing the petition of plaintiff, and after considering the allegations and proofs submitted, it is, upon motion of the plaintiff's attorney, ordered and adjudged that the plaintiff be, and she hereby is, allowed the sum of twenty-five thousand dollars for her support and maintenance, said sum to be paid to her or to her attorneys by defendant immediately; and that this order or judgment be, and the same is, a part of the original judgment herein, and to take effect from the date of said judgment, to wit, the 20th day of April, 1893.

"Done at Sioux Falls, South Dakota, this 29th day of June, 1896."

The suit in the case at bar is based on the latter decree, and seeks to recover the amount of alimony assumed to be adjudged by it. That an action of this nature will lie in the federal courts was settled in Barber v. Barber, 21 How. 582. The defendant was never a resident of the state of South Dakota; nor, so far as the proceedings decreeing a divorce and alimony are concerned, was he ever found therein; nor did the court of that state ever obtain jurisdiction over him; nor did he ever appear in the proceedings, or ever waive the lack of jurisdiction, unless and except so far as can properly be deduced from the fact that after the divorce, and long prior to the proceedings in 1896, he married as already stated. The question is not, as urged on us by the plaintiff, one of mere error in a judgment entered by a court having jurisdiction, but one of the absolute want of any effect by reason of entire lack thereof. The plaintiff relies on Laing v. Rigney, 160 U. S. 531, 16 Sup. Ct. 366. A careless reading of that case might give an impression that the circumstances were substantially like those at bar; but a careful examination of it shows beyond all doubt that the question considered by the supreme court was not one of jurisdiction, but merely one of the form of proceedings as determined by the local law of the state where the judgment was rendered, and in which both parties resided when the proceedings were commenced. We do not deem it material or of value to examine in detail the decisions of the various state courts cited to us by the plaintiff, as the principles which reach this case are clearly determined by the underlying rules of the common law, and the judgments of the supreme court of the United States. That by those rules and judgments the decree of the state court for alimony would have been of no effect whatever, except for the marriage of the defendant in July, 1893, is put beyond all question. The plaintiff states her proposition to the effect that the defendant's subsequent marriage operated to validate the proceedings in the court of the state of South Dakota by the way of estoppel, waiver, or ratification, although she does not distinguish clearly upon which of these three branches of the law she specifically relies. But there are several difficulties in the way. First of all, as the state itself has an interest in the marriage, its existence or nonexistence cannot be determined by the mere contract or conduct of the parties, whether operating in the form of an express agreement, or in that of estoppel, waiver, or ratification. In one case, as in the other, it is equally the voluntary

act of the party, without the consent of the state. It will be found that none of the well-considered cases to which the plaintiff refers turned on the question whether waiver can validate a decree for a divorce which is actually void, but in each such case there was a judgment by a court having jurisdiction, though alleged to be erroneous, or there was a judgment from which an appeal had been taken, and which would therefore be validated unless the appeal were sustained. Under such circumstances, courts would be justified in applying those equitable rules which enable them to control to a certain extent inequitable attacks on judgments by either a writ of error or an appeal. Anything beyond this, and especially anything which would enable either one or both parties to a marriage to validate, under color of estoppel, waiver, or ratification, a pretended divorce, cannot be held as well-considered law.

The true state of the law seems to us to turn on more fundamental propositions. If there was nothing to be ratified, then, of course, the plaintiff's whole proposition falls to the ground. Now, it is not pretended that the decree of the court in South Dakota granting the plaintiff a divorce was erroneous or invalid, according to the laws and the course of proceedings in that state. We are aware that the courts in Massachusetts have not yet fully recognized for all purposes the validity of a divorce obtained by a husband or wife in a state of which he or she is a resident, the other party still remaining a resident of Massachusetts. The furthest they seem to have gone is in Loker v. Gerald, 157 Mass. 42, 31 N. E. 709, where it was held that a divorce obtained by a husband in another state under those circumstances was valid; but the court seems to have rested its conclusions upon the ground which the supreme court refused to accept in Cheever v. Wilson, 9 Wall. 108, 123, that by a legal fiction the domicile of the wife follows that of the husband. The latest cases are Burtis v. Burtis, 161 Mass. 508, 37 N. E. 740, and Dickinson v. Dickinson, 167 Mass. 474, 45 N. E. 1091, which do not seem to exactly touch the proposition under consideration. The rule, however, which the federal courts must recognize, seems to be that stated in Pennoyer v. Neff, 95 U. S. 714, 722, to the effect that every state has the power to determine for itself the civil status and capacities of its inhabitants, coupled with the further proposition that the fiction of the domicile of the wife cannot contravene the right of the courts or the legislature of a state to determine her residence within its own borders according to the actual facts, as was settled for the federal courts in Cheever v. Wilson, supra. Maynard v. Hill, 125 U. S. 190, 8 Sup. Ct. 723, practically settles that the principle cited from Pennoyer v. Neff applies, whether the determination of the status comes directly from the legislature or through its courts, holding valid a legislative divorce granted to the husband, although the wife was not within the jurisdictional limits, and never had been an actual inhabitant thereof, and had no notice or knowledge of the passage of the act. As South Dakota had undoubted actual jurisdiction to determine the status of the plaintiff, and has done so by a proceeding which is not erroneous under the laws of that state, so that she was divorced from the defendant, and was no longer his wife, the

consequence seems inevitable that the defendant, by marrying, simply accepted the fact of such status of the plaintiff as thus fixed; and he was not asked to do anything, and in fact did not do anything, in the nature of ratification, waiver, or estoppel. 2 Bish. Mar., Div. & Sep. § 137. Had the decree of the court of South Dakota been invalid under the laws of that state, then there would have been an opportunity for waiver or ratification on the part of the defendant; but, as it was not, he merely accepted the condition of things as he found them, and therefore he has done no act of waiver or ratification, nor anything else which could lay the basis for any estoppel, or for any other method of prejudicing his rights as they existed before his subsequent marriage. This is undoubtedly the true solution of this case; but, if the subsequent marriage of the defendant can operate, as claimed by the plaintiff, in the way either of waiver, ratification, or estoppel, yet it would seem that, by all the ordinary rules of law, it would operate as such only in favor of the condition of things as it existed when he was married. The defendant did not by his marriage enter an appearance in the court of South Dakota, or give it jurisdiction over him, and all its after decrees affecting his pecuniary interests were as much without jurisdiction against him personally as had been its prior proceedings. The plaintiff has produced to us no well-considered decision, nor proposed to us any principle of law, which would compel us to impose on the defendant an assumption by him, either by waiver, ratification, or estoppel, of the after proceedings of the court in South Dakota, without limitation, and without jurisdiction over his person or property. The law on this point seems so clear against the plaintiff that it is not necessary to enlarge on it further. If the plaintiff desires that we make any special findings of fact, she may prepare them, submit them to the defendant, and pass them to the court, with such suggestions as the defendant may make in reference thereto. Meanwhile we will enter a general finding as follows: The court finds that the decree on which this suit is based is void, and that, therefore, this suit cannot be maintained.